Crocker v. Pierce.

CROCKER *versus* PIERCE *& al.*

31 177<br>90 460

If one, by deed of warranty, grant land to which he then had no title, and afterwards acquires a title, it enures, *eo instanti*, to the benefit of such grantee, or the one, if any, to whom the latter, prior to such acquisition of the title, may have conveyed it, with like covenants of warranty.

Such a conveyance, in its effect, has priority to one, made to another person after the title vested in the grantor.

These effects are wrought by the covenants of warranty, on the principle of estoppel. They do not result from an attachment and levy.

A creditor acquires no title by an attachment and connected levy of land, of which, at the time of the attachment, the debtor had no title, but of which he had given a warranty deed, to a third person, though he, the debtor, after the attachment and before the levy, obtained the title; said warranty deed having been recorded prior to the levy, though not prior to the attachment.

The title thus acquired by the debtor, will enure to the use of his grantee, by force of the warranty.

An attachment of land upon *mesne* process can secure to the creditor, only the property which the debtor had in it at the time of the attachment. No subsequently acquired title of the debtor can be held by it.

ASSUMPSIT.

Money had been received by the defendants for timber cut, (stumpage,) on a township of wild land.

The plaintiff claims title to $\frac{5}{16}$ of the township, and brings this suit to recover that proportion of the stumpage money.

The only question related to the title, it being agreed that the plaintiff is to recover, if the title be in him.

The material facts are substantially as follows: —

The Commonwealth of Massachusetts, owning the township, gave their bond, in 1832, to convey it to the defendants upon payment of certain notes given therefor. The bond was recorded in 1833. The notes having been paid, the deed was given to the defendants, August 16, 1836, and recorded August 18, 1836. Prior to that conveyance, the defendants, by warranty deeds, had granted five-sixteenths of the land to several persons, from whom the same came by regular lines of conveyances to William Smyth.

[The Reporter infers, but has not the means of making it certain, that all the deeds in these lines of conveyances were deeds of general warranty.]

The immediate grantors of Smyth, were Levi Cram, by a deed of one-fourth of the tract, dated May 4, 1835, and recorded the same day; Alfred Johnson and Ralph C. Johnson, by separate deeds, each of one thirty-second part, dated September 4, 1835, and recorded the same day.

These three last mentioned deeds contained covenants of general warranty.

Smyth conveyed to the plaintiff by warranty deed, dated September 5, 1835, and recorded October 11, 1839.

On May 14, 1836, all said Smyth's right, title and interest to any real estate in the county, (in which said township lay,) was attached on a writ in favor of Homes & Homer. In that suit, judgment was recovered December 8, 1841, and the execution, issued thereon, was levied December 18, 1841, upon the above named five-sixteenths of the township.

Homes & Homer conveyed their interest in said five-sixteenths to the defendants, April 4, 1844, by deed, recorded April 17, 1844.

*Shepley and Dana*, for the plaintiff.

When the defendants gave their deed of warranty, they had no seizin in fact or in law. They had nothing but a personal right under the bond. *Shaw* v. *Wise*, 1 Fairf. 113; *Pro.* v. *McFarland*, 12 Mass. 325. Their deed therefore conveyed nothing.

At the time of Homes & Homer's attachment, Smyth had only a personal interest. He was, perhaps, the equitable owner, (though not the legal assignee,) of the right under the contract. (Stat. 1829, c. 431.)

They elected to consider it as an estate in the land, and so attached it. As Smyth had nothing in the land, they held nothing by their attachment.

But even if the attachment held his personal right, Homes & Homer lost the benefit of it by *levying upon the land*, instead of proceeding under the statute, *to sell the right;* the deed from Smyth to plaintiff having in the mean time been recorded. *Aiken* v. *Medex*, 1 Shepl. 157; R. S. c. 94; Act of 1847, chap. 21.

And if the levy was properly made, inasmuch as the attachment was made before Smyth's grantors had any title whatever to the land, or had conveyed any, defendants must claim that, when they acquired the fee in the land, it did not follow the line of their covenants of warranty, but enured to perfect the title of Homes & Homer.

But title *enures* only by virtue of covenants, which create estoppel. It is well settled that a deed of release or quitclaim does not contain *such covenants*, and no subsequently acquired title enures thereby. Nothing but covenants of warranty will suffice. *McCrackin* v. *Wright*, 14 Johns. 193 ; *Jackson* v. *Hubble*, 1 Cowen, 616 ; *Jackson* v. *Bradford*, 4 Wend. 622 ; *Jackson* v. *Waldron*, 13 Wend. 189 ; *Comstock* v. *Smith*, 13 Pick. 116 ; *Allen* v. *Sayward*, 5 Greenl. 227 ; *Baxter* v. *Bradbury*, 20 Maine, 260.

An execution creditor does not stand as well in this regard as a simple releasee. For the creditor's right is altogether adverse. And the debtor himself, giving no deed, and making

no covenants whatever, is not estopped from setting up a subsequently acquired title, against one claiming by virtue of a levy. *Pike* v. *Galvin*, 29 Maine, 183.

When the defendants obtained the title, *eo instanti* it enured, by virtue of their covenants of warranty, to their grantees and those holding under them. *Middlebury College* v. *Cheney*, 1 Vermont, 336 ; *Somes* v. *Skinner*, 3 Pick. 52, and cases cited ; *Lawry* v. *Williams*, 1 Shepl. 281; *Jackson* v. *Murray*, 12 Johns. 201 ; *Stevens* v. *Stevens*, 13 Johns. 316.

But if Homes & Homer acquired a perfectly valid title by their levy, which would have been good in their hands, yet these defendants are utterly and forever estopped by their covenants, from ever, under any circumstances, setting up a subsequently acquired title, against those claiming in good faith by virtue of these covenants.

*W. P. Fessenden*, for the defendants.

Where a grantee claims title under a deed, he is estopped to deny the title of his grantor. This would extend, necessarily, to the first grantor in the line of his deeds. Greenl. Ev. 1, note to sect. 23, and last clause of sect. 24.

This estoppel operates not only in Smyth, but binds his grantees and all who claim under the same title. Greenl. Ev. above cited ; *Hamlin* v. *Bank of Cumberland*, 19 Maine, 66, *vide*, which says, in such a case, " the grantee and all claiming under him are estopped to deny the seizin of the grantor." *White* v. *Patten*, 24 Pick. 324, and cases therein cited ; particularly *Fairbanks* v. *Williamson*, 7 Greenl. 96, which is cited as law, on that point.

It is seen, then, that Crocker, claiming under a deed from Smyth, dated September 5, 1835, is estopped to deny that Smyth was then seized.

As against him, Smyth then had, and continued to have, an attachable interest. If he could convey, that which he could convey might be attached. It was attached, May 14, 1836, and a levy subsequently made.

That levy takes effect from the attachment, and operates, as if the land had been conveyed at the time of attachment.

*Bryant* v. *Fuller*, 19 Maine, 383 ; *Nason* v. *Grant*, 21 Maine, 160 ; *Fairbanks* v. *Williamson*, 7 Greenl. 96.

That case may be questionable to a certain extent : — viz. how far an estoppel is created by a mere quitclaim. If there were a warranty, as in this case, there could be no question.

The levy operates as a statute conveyance, and passes the covenants, contained in the deeds making the title. *White* v. *Whitney*, 3 Metc. 81.

The levy, when made, must be on the interest of the debtor at the time of the attachment ; and no change in the title, between the attachment and the levy, can affect the levy. *Foster* v. *Mellen*, 10 Mass. 421 ; *Brown* v. *Bailey*, 1 Metc. 255.

As to actual possession at the time of the attachment, it is not material.

Pierce's deed conveyed both title and possession against him. It came to Smyth, and he was in possession, and while claiming under the deed, could not deny that he had seizin ; and Crocker is bound by it. A deed, acknowledged and recorded, gives possession.

This case then finds that Smyth had possession.

And that possession, for all purposes of attachment and levy, continued after the deed to Crocker, until the same was recorded.

What could Smyth set up against this statute conveyance by levy ? Nothing anterior to it. He is estopped. He might, perhaps, set up a subsequent conveyance from one who had a better title. *Doe* v. *Payne*, 1 Ad. & Ellis, 538.

Even this he could not set up against a warranty deed. He might against a quitclaim or a levy ; for there are no covenants. And his grantees, being privies in estate, can go no further than he could.

This case is, by agreement, to be decided by the title ; and, for the foregoing reasons, that title is in the defendants.

*Shepley* and *Dana*, in reply.

If it be incompetent for us, (as is contended on the other side,) to deny Smyth's title *prior* to his deed to us, yet there

is no principle which can preclude us from proving, that he subsequently acquired one. It is under such a subsequently acquired title, enuring by way of estoppel, that our claim is supported.

TENNEY, J. — It is a well settled principle, that if one having no title to lands, make a deed of the same with covenants of warranty, and he afterwards acquires a title, it will enure to the benefit of his grantee ; or the one, to whom the latter may have conveyed, with like covenants, although the first grantee may have conveyed to a stranger, after the conveyance to his grantor by the original owner. This effect upon the title results from the covenants of warranty in the deeds by way of estoppel. "No right passeth by release, but the right, which the releasor hath at the time of the release made. For if there be father and son, and the father be disseised, and the son (living the father) releaseth by his deed to the disseisor, all the right, which he hath or may have in the same tenements, without claim of warranty, &c. and after the father dieth, &c. the son may lawfully enter upon the possession of the disseisor." Litt. § 446. And upon the text of Littleton, Lord Coke remarks, " the warranty may rebut and bar him and his heirs of a future right, which was not in him at that time. Co. Litt. 265, (a.) and (b.)

By the application of these principles, the conveyance from the Commonwealth of Massachusetts to the defendants would make perfect the title of Smyth by virtue of their deeds to those to whom they conveyed, and the deeds through and under which he claimed, if he had made no conveyance ; and by the deed from Smyth to the plaintiff, the title would enure to the latter, unless some other claim interposed itself to prevent it.

But it is contended for the defendants, that before the deed from Smyth to the plaintiff could take effect against Homes & Homer, by its registry, their attachment was made, and that the levy, before its expiration, gave to the creditors the same title, which would have enured to them, by the doctrine of

estoppel, if they had held under a deed with covenants of warranty recorded at the time of the original attachment, and that the right of Homes & Homer passed to the defendants.

The purpose of an attachment upon mesne process is simply to secure to the creditor the property which the debtor has at the time it is made, so that it may be seised and levied upon in satisfaction of the debt, after judgment and execution may be obtained. The title to the property remains unchanged by the attachment.

An attachment can operate only upon the right of the debtor existing at the time it is made. No interest subsequently acquired by the debtor can in any manner be affected by the return thereof, when none was in him at the time. If the levy of an execution would not be effectual to pass any title to the creditor at the time of the return of the attachment upon the original writ, the latter could have no effect. *Eaton* v. *Whiting*, 3 Pick. 484; *Smith* v. *Peoples' Bank*, 24 Maine, 185; Stat. of 1821, ch. 60, § 1; R. S. ch. 114, § 29 and 30.

We have been directed to no case, and it is believed that none can be found, where a title has been held to enure to a creditor from an attachment upon a writ by way of estoppel, as from a deed with covenants of warranty, where there is no title of the debtor, upon which the attachment can operate. Upon the principle contended for, it would be in the power of a creditor, by a return of an attachment upon mesne process, to secure to himself any interest in real estate, which his debtor might obtain subsequently thereto, if the interest should be attachable.

At the time, that Homes & Homer caused the return to be made upon the original writ, Smyth, the debtor, had no title whatever in the land, nor had he seizin or possession. If he had made no conveyance, till the title passed from the Commonwealth of Massachusetts to the defendants, the attachment would be entirely without effect against him, but the title of the Commonwealth would enure to his benefit alone. The levy of an execution at the same time, would be a nullity, and the return of full satisfaction thereon, would not pre-

vent the issue of a new execution upon *scire facias.* When the levy was made upon the execution obtained upon the judgment recovered, the title had passed from the Commonwealth of Massachusetts to the defendants, and the same enured to Smyth, and instantly to the plaintiff.

The title of the land from which the timber was taken, being in the plaintiff, by the agreement of the parties, he is entitled to recover the value of the property so taken.

NOTE. — HOWARD J. had been of counsel in the case, and therefore took no part in the decision.