DODGE *v.* BEATTIE & a.

A debtor acquires no attachable interest in land by a contract with the owner to cut and manufacture the timber on the land at a saw-mill erected there by the debtor for the purpose, with a stipulation of the owner of the land to buy the mill or sell the land, at his election, after the timber is cut and manufactured.

PETITION FOR PARTITION. Plea, sole seizin in the defendants. February 26, 1872, Barter and others then owning the premises agreed in writing, with Locke, that he should erect a steam saw-mill upon the land, and cut, manufacture, and deliver upon the cars all the timber growing upon the land, and that they would sell the lumber and pay him five eighths of the proceeds after deducting freight charges. It was also agreed by them, that after the timber should all be manufactured, they would, at their option, buy the saw-mill at a price to be agreed upon or to be fixed by the appraisal of disinterested men, or sell to Locke the land at a price to be determined in the same way. Locke erected the mill; cut and manufactured some of the timber, and, September 11, 1873, on a writ of the plaintiff against him, all his interest in the land, saw-mill, and manufactured lumber in the mill-yard was returned as attached " by leaving at the dwelling-house of the town-clerk " an attested copy of the writ. March 28, 1874, the owners of the land conveyed the same to Locke by deed, and on the same day Locke made a mortgage of the land to the Coös Savings Bank to secure a note of $5,000, and another mortgage to Brown to secure a note of $7,048.80. The bank mortgage was foreclosed, and February 22, 1877, by quitclaim deed, the bank conveyed the premises to Pillsbury, Clough, and Dodge, who took an assignment of Brown's mortgage, and May 10, 1877, conveyed the premises to the defendants. The plaintiff obtained judgment in his suit against

Locke at the April term, 1876, and within thirty days took execution, which was levied by an extent upon the land, certain undivided part, to be held in common with the defendants or their grantors, being set off, which is claimed by the plaintiff. The question presented is, whether Locke at the time of the attachment had an attachable interest in the land.

*G. Y. Sawyer & Sawyer, Jr.*, for the plaintiff. The interest of Locke in the property, at the time of the attachment, was the ownership of a large, valuable mill, with the engines and other machinery in it, standing, under the agreement of February 26, on the land of the other party to the agreement, and the right to have a deed of the land on which it stood, and used in connection with it, upon his paying an appraised value subsequently to be determined, or, at their option, the right to convey the mill and machinery to them, and to receive a price therefor to be determined by appraisal. The mill, though standing on another's land, was affixed to and became a part of the real estate. It was placed there under an agreement between the owners of the land and the owner of the mill that it was to remain permanently as a part of the realty, the land to be conveyed to the mill-owner, or the mill to the land-owners, and thus to be united under the same ownership. The mill was placed upon the land by Locke with the assent of the land-owners, and with the intention on the part of both that it was to remain permanently as a part of the realty, the land and mill united to be his in possession while used and occupied by him in the execution of the work for which primarily the mill was erected, and in the end to be his or theirs, as they might elect a purchase of their right in the land by him, or a purchase of his right in the mill by them. This alternative right of Locke's to receive a deed upon paying the appraised value of the land, or. of receiving pay for his mill, was such that upon proper proceedings he could have obtained a decree for specific performance of the contract, ordering the other party to make the election, and execute a conveyance of the land or receive and pay for a conveyance of the mill. Sto. Eq. Jur., title, " Specific Performance."

The provision of the statute under which the attachment was made (Gen. St., *c.* 205, *s.* 7, then in force) is, that by an attachment of real estate "all the debtor's interest therein is holden,   *   *   * though such interest be   *   *   *   a right to receive a conveyance thereof by any contract." By *s.* 12 of the same chapter it is further provided, that "no attachment of any interest in real estate shall be defeated by any change in the nature of the debtor's right thereto,   *   *   * but the whole interest of the debtor upon such change shall be holden by the attachment." These provisions of the General Statutes, in force when the attachment was made, are reënacted in Gen. Laws, *c.* 224, *ss.* 7 and 12.

Prior to the enactment of these provisions in the Revised Stat-

utes, a debtor might have his property locked up against the attachment of his creditors in the real estate of another, under a contract by the owner of the estate to convey it to the debtor upon some stipulated terms at a future day. It is clear that the object of the provisions was to give to creditors the power to seize the debtor's right, interest, or property so situated, as an interest in the land by an attachment on the writ, and a subsequent extent of the execution upon the debtor's right in the land, or a sale of it on the execution, and thus give to the creditor or to the purchaser whatever right or claim the debtor had to a conveyance of the title upon his fulfilling whatever terms or conditions, upon which the debtor's right depended, remained to be performed. The case of the plaintiff as Locke's creditor is within the mischief at which these provisions are aimed. Having contributed to Locke's property, covered by this contract, by his services in building the mill and performing Locke's work under the contract, and for which his entire debt accrued, his only remedy was an attachment of his debtor's interest in the property, taking his chance of the election to convey to Locke instead of his conveying to the other party; and if in the end a conveyance is made to Locke, then the alternative character of the stipulation for the conveyance is removed. Could it possibly make any difference as to the question intended to be submitted in this case, that is, whether Locke had an attachable interest as real estate, that Locke had the right to give or receive the conveyance at his option ?

If Locke had had the right to elect, and had received the deed on March 28, 1874, under precisely the same circumstances as he did receive it, we submit with confidence that the case would be held to be within the spirit of the statute, and that the attachment made in September would continue to hold the land under the change in the nature of the debtor's right made by the execution of the deed in March.

*Ladd & Fletcher*, for the defendants. The original contract stipulates that the option shall be with the other party, and not with Locke, to say whether the mill-owners should have the right to buy the land, or the land-owners the right to buy the mill, at some future time. Under this provision of the contract we are unable to see how Locke, or any one claiming under him, could contend seriously that the mill was anything but personal property at the time the attachment was made, or how it could ever become anything else until the option which the land-owners had had been asserted by their choosing to let Locke take the land at the appraisal, such as the contract provides for. The mere fact that a contingency might happen by which Locke would be entitled to a conveyance of the land to him upon paying for it, is altogether too shadowy and uncertain to be called a present interest in land, which could be held by a real estate attachment. It

must be a present interest, an interest which in fact exists at the time of the attachment. Here the interest which he might possibly have under the contract to the land upon which his mill set was nothing which was to any extent within his control, and the rights of the plaintiff cannot be greater than his in the land. The fact that the mill was a large mill, and that it was put upon the land in a permanent manner, etc., has nothing to do with the question whether or not it was personal property or real estate. This is not the criterion which characterizes it as one or the other species of property. But this is the test, we think: Had Locke any interest in the land such as he could enforce, so that the personal property in the mill and the real estate in land could be brought together as a part of one and the same estate? We think, when the statute says that the debtor's right to receive a conveyance of real estate by virtue of a contract may be attached as real estate, it means a right which the debtor could enforce so as to get the title into him, it is in fact a vested interest which can be defeated by no one's act but his own—by a failure on his part to perform his contract.

Here the debtor did not have a right to receive a conveyance. That right was the right of another party, and over which he had no control. That other party might elect that he should take a deed of the land, and he was bound by his contract to do so. They might insist upon his selling the mill to them, and his contract would be equally binding on him to do so.

Undoubtedly Locke had rights under the contract, which, upon a proper case being shown, a court of equity would protect and enforce. If he had fully performed on his part, and the other parties refused to elect whether they would buy the mill or sell their land, a court of equity might, by a decretal order, compel them to do as they had agreed to do,—that is, make their election, and proceed thereunder according to the contract. But suppose all this had happened: how can the court or this plaintiff know what the election of the other parties to the contract would have been? Whether Locke should then have an interest in land would depend not upon the interpretation of the contract, or the order of the court, but wholly on the will and pleasure of the other parties to the contract.

In point of fact nothing of this kind was ever done. The contract was never performed by Locke. The other parties never made, and were never called upon formally or informally to make, the election which it is stipulated in the contract they might make when the contingency therein contemplated arose. That contingency never did arise, for the reason stated above, that Locke never did perform the contract.

But admitting that Locke had an interest under the contract which was attachable, and that the plaintiff made a proper attachment of it, still the defendants are entitled to judgment upon the

facts stated in the case. The proceedings upon the execution were fatally defective. The right of Locke was set off, instead of being sold as provided in Gen. St., c. 219, s. 11, which provides that " The right of any debtor to receive a conveyance of real estate on performance of any contract may be taken on execution and sold at auction, and the purchaser shall have a remedy by a bill in equity to compel a conveyance."

*G. Y. Sawyer & Sawyer, Jr.*, in reply. I. The question whether Locke did or did not fulfil his contract is not open to inquiry here. We claim that he did so far fulfil the contract that the owners of the land, the other party to it, were content to give him a deed on account of the contract, and upon terms with which they were content in lieu of terms to be fixed by appraisal. Those matters may be proper subjects of inquiry on the trial of the case by the jury, if the court shall hold in this case that the debtor had an attachable interest in the real estate under the statute.

II. The right, if one existed at the time of the attachment, could not be sold at the time of the levy of the execution, because the debtor Locke, having fulfilled his contract so far that the owners were willing to give him a deed, had then become the owner of the land. His interest or right in the land, such as it was at the time of the attachment, had become changed to an absolute title, and there was no longer a right to be sold.

ALLEN, J. The saw-mill was not attached as personal estate by leaving a copy of the writ at the dwelling-house of the town-clerk *( Scott* v. *Manchester Print Works*, 44 N. H. 507), and there was no attempt to levy an execution upon it as a chattel. If the plaintiff acquired any title in the property by the extent of the execution, it was by virtue of an attachment of real estate. At the time of the attachment, the mill was not annexed to the realty. It was agreed that Locke might erect the mill there for the purpose of manufacturing the lumber. So far it was a mere license to build a saw-mill upon the land, and, by the license, the mill did not become real estate. The agreement of the other parties to the contract to buy the mill or sell the land at their option did not operate to annex the mill to the land *( Ashmun* v. *Williams*, 8 Pick. 402), nor give the plaintiff an interest in it which could be attached as real estate.

At that time Locke had no right to receive a conveyance of the land. Whatever right he had under the contract was not of the nature of a present interest in real estate. There was no vested interest. It depended upon a double contingency,—a contingency upon a contingency. It was only a right to acquire the right to compel the owners of the land to make the alternative election to buy his mill or sell to him their land. He could not claim a conveyance until the owners of the land should exercise the option

of buying or selling, and the option was not to be exercised until Locke should perform his part of the contract by cutting and manufacturing the lumber. If they could, on refusal, be compelled in equity to exercise the option, it could not be done until Locke should perform his agreement. If he had so far performed as to be able to compel an election, that election might be to take instead of to give a conveyance. And if the plaintiff would be equitably entitled to the proceeds of the sale, in case of an election to buy the mill, the fund could not be reached by an attachment and the extent of an execution such as were made in this case.

The right of Locke was a personal one, and could not without the consent of the other parties be transferred to a third person. The right to compel an election that he should take or give a conveyance depended upon a condition precedent, and that condition could only be performed by Locke personally. It could not be satisfied by the payment of money. The power to compel an election to buy or sell might never come into existence, for Locke might refuse to perform the conditions, and their performance could not be compelled. The duty of performing the conditions was not assignable, and the right depending upon the performance of the duty could not be assigned. *Bethlehem* v. *Annis*, 40 N. H. 34; *Rollins* v. *Riley*, 44 N. H. 9. There being no present right to a conveyance of the land, nor right to compel an election to buy or sell, and whatever right existed, from its dependence upon personal services not yet performed, not being assignable, there was no attachable interest of Locke's in the land at the time of the attachment.

The subsequent sale of the land to Locke was not an exercise of the option provided for by the contract, and the right of Locke in the land acquired by purchase subsequent to the attachment could not be affected by the attachment. It was only Locke's interest, at the time, that was attached and subsequently taken by execution. The interest acquired by Locke subsequent to the attachment did not accrue to the plaintiff by way of estoppel, as in case of after acquired interests of the grantor following covenants of title. *Crocker* v. *Pierce*, 31 Me. 177; Drake Att., ss. 223, 234, 245. Without the right subsequently to be acquired by performance of the condition, the right at the time of the attachment was not an attachable interest in the land. The plaintiff could not perform the condition and make perfect the right, and he acquired no lien by his attachment, and, as against the defendants, took nothing by the levy of his execution.

*Case discharged.*

Stanley, J., did not sit: the others concurred.